IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| MAX-PLANCK-GESELLSCHAFT ZUR FOERDERUNG DER WISSENSCHAFTEN e.V., <br><br> Plaintiff, <br><br> v. <br><br> WOLF GREENFIELD & SACKS, PC, <br><br> Defendant. | CIVIL ACTION NO. <br> 1:09-CV-11168-PBS |

## WOLF GREENFIELD & SACKS, PC'S AMENDED ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT

Pursuant to Fed. R. Civ. P. 8 and 15(a)(1), defendant Wolf Greenfield & Sacks, PC ("WGS") hereby submits its amended answer and responds to the individually numbered paragraphs of Plaintiff's First Amended Complaint as follows:

### INTRODUCTION

The unnumbered Introduction of Plaintiff's First Amended Complaint merely purports to characterize the claims of Max-Planck-Gesellschaft Zur Foerderung der Wissenschaftern e.V.'s ("Max-Planck") against WGS. The Introduction violates Fed. R. Civ. P. 10(b) and should be stricken. To the extent that any response is required, WGS denies the allegations of the Introduction.

### FACTS COMMON TO ALL COUNTS

1. WGS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1 of Plaintiff's First Amended Complaint.

2. WGS admits the allegations contained in Paragraph 2 of Plaintiff's First Amended Complaint.

3. WGS admits the allegations contained in Paragraph 3 of Plaintiff's First Amended Complaint.

4. WGS admits that Whitehead, MIT and UMASS are co-owners of the Tuschl I patent applications, but denies that they appear named on each application as such (including provisional applications). WGS denies that Max-Planck contributes fifty percent of the costs of prosecuting the Tuschl I patent applications. WGS denies that Max-Planck has paid any of its fees. Further answering, WGS states that it invoices Whitehead exclusively for the fees and costs of prosecuting the Tuschl I patent applications and that its invoices are paid by Whitehead.

5. WGS denies the allegations contained in Paragraph 5 of Plaintiff's First Amended Complaint. Further answering, WGS states that at various times EMBL has been named as co-owner on certain of the Tuschl II patent applications.

6. WGS admits only that as of at least March 31, 2004 it had been engaged by Whitehead for the purpose of prosecuting the Tuschl I patent applications. WGS denies the remaining allegations contained in Paragraph 6 of Plaintiff's First Amended Complaint. Specifically, to the extent the allegations in this Paragraph imply that WGS had an attorney-client relationship with Max-Planck, WGS denies the existence of any such relationship.

7. WGS admits that Max-Planck executed a Revocation of Powers of Attorney and Appointment of New Attorneys and/or Agents and Change of Correspondence Address ("Revocation and Appointment Form") appointing WGS for the purpose of prosecuting the Tuschl I patent applications before the USPTO. WGS denies that the referenced document was executed by Max-Planck on March 31, 2004. WGS admits that Exhibit A appears to include, among other things, a copy of a Revocation and Appointment Form executed by Max-Planck on March 18, 2004, which document speaks for itself. WGS denies the last sentence of Paragraph 7

of the First Amended Complaint. Further answering, WGS states that Max-Planck was not its client in connection with any work performed on the Tuschl I patent applications.

8.  WGS denies the allegations contained in Paragraph 8 of the First Amended Complaint.

9.  WGS denies that the allegations contained in the first sentence in Paragraph 9 of the First Amended Complaint. WGS admits that at some point a dispute arose among the co-owners, but WGS denies the characterization of that dispute.

10. WGS denies the allegations contained in Paragraph 10 of the First Amended Complaint. Further answering, WGS states that both the Tuschl I and Tuschl II applications and priority claims had already been made prior to WGS's involvement in the Tuschl I patent prosecution.

11. WGS admits the first sentence of Paragraph 11 of the First Amended Complaint. WGS admits that Whitehead declined to make certain revisions sought by Max-Planck and that WGS followed the instructions of Whitehead, its client, in that regard. WGS denies the remaining allegations contained in Paragraph 11 of the First Amended Complaint.

12. WGS admits that on June 24, 2009, Max-Planck requested that it withdraw from the prosecution of the Tuschl I patent applications. WGS denies the remaining allegations contained in Paragraph 12 of the First Amended Complaint. Further answering, WGS states that, since Whitehead was its only client, the dispute among the Co-owners did not result in a conflict of interest for purposes of the PTO Code of Professional Responsibility.

13. WGS admits the allegations contained in Paragraph 13 of Plaintiff's First Amended Complaint. Further answering, WGS states that it never requested a conflict waiver because it was under no legal or ethical obligation to obtain a conflict waiver from Max-Planck

relating to its representation of Whitehead in connection with the prosecution of the Tuschl I patent applications.

14. WGS denies the allegations contained in Paragraph 14 of the First Amended Complaint.

15. WGS admits that it informed Max-Planck that it represented only Whitehead in connection with the prosecution of the Tuschl I patent applications and denies the remaining allegations contained in Paragraph 15 of Plaintiff's First Amended Complaint.

16. WGS admits that on or about June 26, 2009, Max-Planck, MI and Alnylam caused litigation to be filed styled as <u>Max-Planck-Gesellschaft Zur Forderung Der Wissenschaften E.V. et al. v. Whitehead Institute for Biomedical Research et al.</u>, Civil Action No.09-2674-BLS.  WGS denies the remaining allegations contained in Paragraph 16 of Plaintiff's First Amended Complaint to the extent that they are inconsistent with or otherwise mischaracterize the litigation.

## COUNT I – LEGAL MALPRACTICE

17. WGS denies the allegations contained in Paragraph 17 of Plaintiff's First Amended Complaint.

18. WGS denies the allegations contained in Paragraph 18 of Plaintiff's First Amended Complaint.

19. WGS denies the allegations contained in Paragraph 19 of Plaintiff's First Amended Complaint.

## COUNT II – BREACH OF FIDUCIARY DUTY

20. WGS denies the allegations contained in Paragraph 20 of Plaintiff's First Amended Complaint.

21. WGS denies the allegations contained in Paragraph 21 of Plaintiff's First Amended Complaint.

22. WGS denies the allegations contained in Paragraph 22 of Plaintiff's First Amended Complaint.

## COUNT III – DECLARATORY JUDGMENT

23. WGS denies the allegations contained in Paragraph 23 of Plaintiff's First Amended Complaint.

24. WGS denies the allegations contained in Paragraph 24 of Plaintiff's First Amended Complaint.

25. WGS denies the first sentence of Paragraph 25 of Plaintiff's First Amended Complaint. WGS admits that it followed the instructions of its client, Whitehead, and denies the remaining allegations contained in the second sentence of Paragraph 25 of Plaintiff's First Amended Complaint.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

Max-Planck fails to state a claim upon which relief can be granted in at least the following respects:

  a) The mere existence of a power of attorney does not create an attorney-client relationship, and the parties' course of conduct in this case does not establish an attorney-client relationship. See Sun Studs, Inc. v. Applied Theory Associates, 772 F.2d 1557, 1568-69 (Fed. Cir. 1985);

  b) WGS did not owe the fiduciary and other duties articulated by Max-Planck because such duties potentially could have conflicted with the duties that WGS owed to its client in the patent prosecution, Whitehead. See Spinner v. Nutt, 417 Mass. 549, 552-554 (1994);

c) A violation of the disciplinary rules, without more, will not support a claim for legal malpractice. See <u>Fishman v. Brooks</u>, 396 Mass. 643, 649 (1986);

d) Max-Planck has failed to set forth specific facts entitling it to the relief or damages requested, which are entirely speculative pending (1) the outcome of the Co-Owners litigation, and/or (2) the issuance or denial of any patents from the USPTO related to the Tuschl I or Tuschl II family of patent applications;

e) Max-Planck has failed to plead an actual controversy between the parties that would require the Court to make binding declarations of right, duty, status and other legal relations;

f) Max-Planck's rights, if any, with respect to the prosecution of the Tuschl I patent applications are governed by the agreements into which it entered with the Co-Owners; and,

g) Any obligations WGS may have with respect to Max-Planck arise solely under the prosecution of the Tuschl I patent applications and do not flow to the Tuschl II patent applications.

### Second Affirmative Defense

Max-Planck's claims are barred by the doctrines of estoppel and waiver.

### Third Affirmative Defense

Max-Planck's claims are barred by the doctrine of laches.

### Fourth Affirmative Defense

Max-Planck's claims are barred because of its own knowledge, acts and conduct, and/or because of the knowledge, acts and conduct of its principals, officers, agents and other representatives.

### Fifth Affirmative Defense

Max-Planck's claims are barred by the applicable statutes of limitations.

### Sixth Affirmative Defense

The contracts into which Max-Planck entered with the Co-Owners are a superseding and intervening cause of any purported harm caused to Max-Planck.

### Seventh Affirmative Defense

Max-Planck will be unable to show that that it would have achieved a better result if counsel other than WGS had been engaged to prosecute the Tuschl I patent applications.

WOLF GREENFIELD & SACKS, PC

By its attorneys,

/s/ Richard M. Zielinski
Richard M. Zielinski, BBO #540060
Timothy J. Dacey, BBO #111800
Elizabeth L. Schnairsohn, BBO #658532
GOULSTON & STORRS, P.C.
400 Atlantic Avenue
Boston, Massachusetts 02110-3333
Telephone: (617) 482-1776
Facsimile: (617) 574-4112

Dated: August 11, 2009

GSDOCS\1931480.1

## CERTIFICATE OF SERVICE

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that all counsel of record are so registered.

                /s/ Richard M. Zielinski
                Richard M. Zielinski